IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**PHILLIP LANE successor-in-interest**                                              **PLAINTIFF**
**to the Estate of ALLAN R. LANE**

v.                                                       No. 4:25-cv-00038-MPM-DAS

**REGIONS BANK**                                                                   **DEFENDANT**

<u>**MEMORANDUM OPINION**</u>

This cause comes before the Court on Defendant Regions Bank's ("Regions") Motion to Compel Arbitration [10]. Plaintiff Phillip Lane ("Lane") has responded in opposition [13] to Region's motion as to claims 7-11 of his Complaint [1]. The Court has reviewed the record, along with relevant case law and evidence, and is now prepared to rule.

**RELEVANT BACKGROUND**

Regions entered into a Home Equity Line of Credit Contract ("HELOC") with the late Allan Lane and his late wife Laurie Lane, which was secured by a Deed of Trust. Allen Lane also allegedly purchased a Debt Protection Rider to protect his wife and child, Phillip Lane the Plaintiff in the matter, from the burden of a mortgage debt in case he passed away before paying off the loan.

The Deed of Trust [1] executed on February 19, 2008, was recorded in Book 2524 at page 3480 in the land records of Washington County, Mississippi. The collateral described in the Deed was the residential property located in 1037 Baskin Drive, Greenville, MS 38703.

Allen Lane passed away on March 25, 2022, as a widower. His son, Mr. Phillip Lane, could not make the payments due under the loan, and Regions refused to put the Debt Protection Rider into effect. On June 21, 2024, Mr. Lane and Regions executed a Loan Modification Agreement ("Modification Agreement") so that Regions would not foreclose on the collateral in the Deed

Trust. The Modification Agreement [1] states that it "amends and supplements [the]… Deed of Trust… ("Security Instrument"), dated February 11, 2008, and recorded in BOOK 2524 PAGE 3480-3487 of the Official Records of … WASHINGTON COUNTY, Mississippi." The Modification Agreement [1] further states that it covers the real and personal property described in the "Security Instrument" which property is defined as "1037 Baskin Drive, Greenville, MS 38703." The Deed of Trust contained an arbitration provision, but the Modification Agreement did not have one.

Mr. Lane filed suit against Regions for 12 different claims relating to how Regions handled the HELOC and the Modification Agreement. Additionally, Mr. Lane filed a demand for arbitration with the American Arbitration Association for his claims pertaining the Deed of Trust and HELOC.

Regions filed a Motion to Compel Arbitration [10] as to all of Mr. Lane's claims against it pursuant to the arbitration provision in the Deed of Trust. Mr. Lane opposed the motion [13], specifically as it related to the Claims numbered 7-11 in his Complaint [1] as they related to the Modification Agreement rather than the Deed of Trust and the HELOC.

## STANDARD OF REVIEW

The FAA "expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 F. App'x 462, 463 (5th Cir. 2004) (quoting *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002)).

In adjudicating a motion to compel arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1-16, a court first considers whether the parties agreed to arbitrate the dispute in question. *American Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003). To make this determination, the court considers "(1) whether there is a valid agreement to arbitrate between the

2

parties; and (2) whether the dispute in question falls within the scope of that agreement." *Id.* (quotation marks omitted). Ordinary contract principles apply to this analysis. *Id.* at 538. The Fifth Circuit has noted that "[a]ny ambiguities regarding the scope of an arbitration clause are resolved in favor of [arbitration]." *Allen v. Regions Bank*, 389 F. App'x 441, 446 (5th Cir. 2010) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76 (1989)). A court cannot compel a party to arbitrate when it never agreed to. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19-20 (1983).

## ANALYSIS

### I. Arbitrability

As to the first prong of the two-step inquiry, it is undisputed that Allan Lane and Laurie Lane entered into a Deed of Trust agreement with Regions. It is also undisputed that Mr. Phillip Lane serving as the successor-in-interest of his parents, and who has initiated arbitration proceedings as to some of his claims against Regions, is bound by the Deed of Trust executed on February 19, 2008. The Deed of Trust [1] contained an arbitration provision with broad language regarding any claim or dispute subject to arbitration, specifically:

> [A]ny controversy, claim, dispute or disagreement (any "Claim") arising out of, in connection with or relating to (1) Grantor's business relationship with Lender; (2)the performance, interpretation, negotiation, execution, collateralization, administration, repayment, modification, or extension of this Deed of Trust . . . (4) the collection of any amounts due under this Deed of Trust; (5) any alleged tort or other claim arising out of or relating in any way to this Deed of Trust, collateral under this Deed of Trust, any account established pursuant to this Deed of Trust, or any insurance or mechanical repair contract purchased pursuant to or in connection with this Deed of Trust; (6) any breach of any provision of this Deed of Trust; (7) any statement or representation made to Grantor by or on behalf of Lender; or (8) any of the foregoing arising out of, in connection with or relating to any agreement which relates to this Deed of Trust or any assignment of this Deed of Trust, or any relationship created by or resulting from this Deed of Trust, will be settled by binding arbitration under the Federal Arbitration Act ("FAA").

As to the second prong, the Court must determine whether the dispute in question falls within the scope of the agreement. Mr. Lane has conceded that the arbitration clause applies to his claims related to the Deed of Trust itself, as he filed a demand for arbitration with the American Arbitration Association for the claims the Complaint [1] lists as "Maybe subject to Arbitration"; and his response in opposition [13] requests that Regions participate in that pending arbitration proceeding. Mr. Lane's response in opposition only argues that Claims 7 through 11 in his Complaint [1] may not be compelled into arbitration. Therefore, since Regions' motion to compel arbitration [10] seeks to force all of Mr. Lane's claims into arbitration, it is undisputed that the Deed of Trust's arbitration provision is valid as applied to Mr. Lane's Claim 1-6 and Claim 12 of his Complaint [1], and those Claims listed 1-6 and 12 can be compelled into arbitration. The Court interprets this agreement to arbitrate to mean that any claim that would be subject to the Deed of Trust's arbitration provision can be compelled to arbitration.

The primary dispute between the parties is whether the Deed of Trust's arbitration provision applies to Mr. Lane's claims designated as 7 through 11 in his Complaint [1] as they pertain to causes of action concerning the Modification Agreement executed between Mr. Lane and Regions on June 21, 2024. As while the Modification Agreement does amend and supplement the Deed of Trust, and would be subject to its arbitration provision, it references a Deed of Trust dated February 11, 2008, which is different from the February 19, 2008, date listed in the Deed of Trust containing the arbitration provision Regions seeks to against Mr. Lane.

**II.     Enforcement of Arbitration Clause for Claims Seven through Eleven**

The determinative issue before the Court is whether the Modification Agreement is subject to the arbitration provision in the Deed of Trust dated February 19, 2008, based on the different date referenced in the Modification Agreement itself.

Regions contends that the Modification Agreement modifies the February 19th Deed of Trust, and any claims regarding it should be within the scope of the Deed of Trust's arbitration provision, as the error in the listed date was a mistake. Mr. Lane contends that the February 19th Deed of Trust has no effect on the Modification Agreement because the Modification Agreement references a separate Deed of Trust dated February 11, 2008, creating ambiguity in the contract. Mr. Lane thus posits that no applicable arbitration provision that encompasses the Modification Agreement as a result.

"Questions concerning the construction of contracts are questions of law that are committed to the court rather than questions of fact committed to the fact finder." *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So.2d 748, 752 (Miss. 2003). The Mississippi Supreme Court has set out a three-tiered approach to contract interpretation. *Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.*, 908 So.2d 107, 111 (Miss. 2005). This approach is:

> Legal purpose or intent should first be sought in an objective reading of the words employed in the contract to the exclusion of parole or extrinsic evidence. First, the "four corners" test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement .... to determine how to interpret it. When construing a contract, we will read the contract as a whole, so as to give effect to all of its clauses. Our concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy. Thus, the courts are not at liberty to infer intent contrary to that emanating from the text at issue. On the other hand, if the contract is unclear or ambiguous, the court should attempt to "harmonize the provisions in accord with the parties' apparent intent." Only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent. "[T]he mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law.

> *Id.* (internal citations omitted)

In examining the Modification Agreement, the four corners of the document indicate that it is amending and supplementing an already existing document between the parties. "Where a

writing refers to another document, that other document, or the portion to which reference is made, becomes constructively part of the writing and in that respect the two form a single instrument." *Nationwide Mut. Fire Ins. Co. v. Interface Sec. Sys., LLC*, 655 F. Supp. 3d 486, 497 (S.D. Miss. 2023) (citing Williston on Contracts, § 30:25 (4th ed. 1999)).

The Modification Agreement clearly states that anything in the Deed of Trust it is modifying and that it has not changed or covered in the Modification Agreement remains the same and stays in full force and effect. Excluding the erroneous date, the Deed of Trust referenced in the Modification Agreement has the same features as the February 19, 2008 Deed of Trust including the description of the collateral and the location where it has been recorded. Therefore, the Court concludes that, other than the reference to the erroneous date, the overall intent of the parties is to unambiguously modify a pre-existing agreement between them, while retaining the full force and effect of any unmodified portions of the previous agreement and incorporating the Modification Agreement within the scope of the referenced Deed of Trust.

To the extent the February 11, 2008 date within the Modification Agreement creates an ambiguity, parol evidence may be used to explain or clarify, but not contradict, ambiguous terms in a written instrument. *Lambert v. Mississippi Limestone Corp.*, 405 So. 2d 131, 133 (Miss. 1981). Additionally, "[a] written contract should be construed according to the obvious intention of the parties, notwithstanding clerical errors or inadvertent omissions therein, which can be corrected by perusing the whole instrument." *Robinson v. Martel Enters, Inc.*, 337 So. 2d 698, 701 (Miss. 1976). "If an improper word has been used or a word omitted, the court will strike out the improper word or supply the omitted word if from the context it can ascertain what word should have been used." *Id.*

6

Here, Mr. Lane failed to provide evidence that a February 11, 2008 Deed of Trust exists, and Regions confirms no such document exists. Mr. Lane claims he was coerced into signing the Modification Agreement to prevent Regions from foreclosing on the February 19th Deed of Trust's collateral, indicating that when Mr. Lane signed the Modification Agreement his intent related to the February 19th Deed of Trust.

Given the lack of a February 11, 2008 Deed of Trust to modify, and the existence of the February 19, 2008 Deed of Trust which is almost perfectly described in the Modification Agreement, the Court finds that the "February 11, 2008" date should have read "February 19, 2008." As a result, Mr. Lane's claims numbered 7-11 that relate to the Modification Agreement itself are subject to the February 19, 2008 Deed of Trust's arbitration provision, and can be compelled to arbitration.

## CONCLUSION

**ACCORDINGLY**, Regions Bank's Motion to Compel Arbitration [10] is **GRANTED** as to all 12 claims of Mr. Lane's Complaint [1]. The parties are required to provide the Court with a quarterly status update of their arbitration proceedings, beginning on January 1, 2026.

This case is hereby stayed and administratively closed pending the outcome of arbitration.

**SO ORDERED** this 14th day of August, 2025.

    /s/Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI